Form as of May 1, 2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

Pablo Fernandez

  Plaintiff(s),

-against-

The City of New York, et al.

  Defendant(s).

---

20 CIV. NO. 10498

**[Proposed] Civil Case Management Plan and Scheduling Order**

The parties submit this [Proposed] Civil Case Management Plan and Order pursuant to Federal Rule of Civil Procedure 26(f):

**1.**  **Meet and Confer:** The parties met and conferred pursuant to Fed. R. Civ. P. 16(c) and 26(f) on  May 14, 2021                                                                                 .

**2.**  **Alternative Dispute Resolution / Settlement:**

  **a.**  Settlement discussions have ☐ / have not ☑ taken place.

  **b.**  The parties have discussed an informal exchange of information in aid of early settlement and have agreed to exchange the following:

  Please see attached appendix.

  **c.**  The parties have discussed use of alternative dispute resolution mechanisms for use in this case, such as (i) a settlement conference before the Magistrate Judge, (ii) participation in the District's Mediation Program, and (ii) retention of a private mediator.  The parties propose the following alternative dispute mechanism for this case:

  Not applicable at this time.

1

    **d.**    The parties recommend that the alternative dispute resolution mechanism designated above be employed at the following point in the case (e.g., within the next 30 days; after exchange of specific information; after deposition of plaintiff; etc.):

    Not applicable at this time.

    **e.**    The use of any alternative dispute resolution mechanism does not stay or modify any date in this Order.

**3.**    **The Parties' Summary of Their Claims, Defenses, and Relevant Issues:**

<u>Plaintiff(s)</u>:

Please see attached appendix.

<u>Defendant(s)</u>:

Please see attached appendix.

**4.**    **The Parties' Asserted Basis of Subject Matter Jurisdiction:**

Federal question jurisdiction (28 U.S.C. §§ 1331 and 1343); Supplemental jurisdiction (28 U.S.C. § 1367(a)).

**5.**    **Subjects on Which Discovery May Be Needed:**

<u>Plaintiff(s)</u>:

Please see attached appendix.

Defendant(s):

Please see attached appendix.

6. **Initial Disclosures** pursuant to Fed. R. Civ. P. 26(a)(1) will be exchanged no later than __June 28, 2021__.

7. **Amended Pleadings:**

   a. No additional parties may be joined after __August 13, 2021__, without consent or leave of Court.

   b. No amended pleadings may be filed after __August 13, 2021__, without consent or leave of Court.

8. **Fact Discovery:**

   a. All fact discovery shall be completed by __May 13, 2022__.

   b. Initial requests for production were/will be served by __July 12, 2021__. Any subsequent requests for production must be served no later than 45 days prior to the discovery completion deadline.

   c. Initial interrogatories shall be served by __July 12, 2021__. Any subsequent interrogatories must be served no later than 45 days prior to the discovery completion deadline.

   d. Depositions shall be completed by __May 13, 2022__.

   e. Requests to admit shall be served by __March 29, 2022__.

   f. The parties propose the following limits on discovery:

   The parties intend to negotiate a proposed protective order and remote deposition protocol. The parties agree to 15 depositions per side without leave from court, and note that additional depositions may be necessary.

   g. Except as otherwise modified in 8(f) above, the parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of New York. The interim fact discovery deadlines may be altered by the parties on consent without application to

3

  the Court, provided that the parties meet the deadline for completing fact discovery.

**h.** The parties would like to address at the conference with the Court the following disputes, if any, concerning fact discovery:

Scope of discovery concerning Mollen Commission records and findings.

**9.** **Expert Discovery (if applicable):**

**a.** The parties do ✓ / do not ☐ anticipate using testifying experts.

**b.** Anticipated areas of expertise:

Police patterns and practices, police corruption, eyewitness identifications, and damages (including both psychological and physical)

**c.** Expert discovery shall be completed by August 12, 2022.

**d.** By March 14, 2022, the parties shall meet and confer on a schedule for expert disclosures, including reports, production of underlying documents, and depositions, provided that (i) expert report(s) of the party with the burden of proof shall be due before those of the opposing party's expert(s); and (ii) all expert discovery shall be completed by the date set forth above.

**e.** The parties would like to address at the conference with the Court the following disputes, if any, concerning expert discovery:

**10.** **Electronic Discovery and Preservation of Documents and Information:**
(If appropriate for the case, use the Court's Joint Electronic Discovery Submission and Proposed Order available at:
https://nysd.uscourts.gov/hon-robert-w-lehrburger.

**a.** The parties have ✓ / have not ☐ discussed electronic discovery.

**b.** If applicable, the parties shall have a protocol for electronic discovery in place by June 28, 2021.

     **c.**    The parties would like to address at the conference with the Court the following disputes, if any, concerning electronic discovery:

**11.**   **Anticipated Motions** (other than summary judgment, if any)**:**

Plaintiff's motion for substitution of party regarding defendant Stephen Mshar (deceased);
Plaintiff's motion to exempt case from LCR 83.10.

**12.**   **Summary Judgment Motions:** No less than 30 days before a party intends to file a summary judgment motion, and in no event later than the close of discovery, the party shall notify this Court, and the District Judge, that it intends to move for summary judgment and, if required by the District Judge's Individual Practices, request a pre-motion conference.

If pre-motion clearance has been obtained from the District Judge where required, summary judgment motions must be filed no later than 30 days following the close of all discovery if no date was set by the District Judge or, if a date was set by the District Judge, in accordance with the schedule set by the District Judge. If no pre-motion conference is required, summary judgment motions must be filed no later than 30 days following the close of discovery.

Any summary judgment motion must comply with the Federal Rules of Civil Procedure, the Local Rules of this District, and the Individual Practices of the District Judge to whom the case is assigned.

**13.**   **Pretrial Submissions:** The parties shall submit a joint proposed pretrial order and any required accompanying submissions 30 days after decision on the summary judgment motion(s), or, if no summary judgment motion is made, 30 days after the close of all discovery.

**14.**   **Trial:**

    **a.**    All parties do ☐ / do not ☑ consent to a trial before a Magistrate Judge at this time.

    **b.**    The case is ☑ / is not ☐ to be tried to a jury.

    **c.**    The parties anticipate that the trial of this case will require __20__ days.

                                                                                                                 [15 for Plaintiff]

**15.**    **Other Matters the Parties Wish to Address (if any):**

Anticipated and unopposed motion by Plaintiff to exempt case from LCR 83.10.

**16.**    The Court will fill in the following:

☐ A status conference will be held before the undersigned on _____ at _____.m. in Courtroom 18D, 500 Pearl Street.

☐ The parties shall submit a joint status letter every _____ days and shall also inform the Court at the time the parties believe a settlement conference would be fruitful.

Dated: _____                                SO ORDERED.

                                                                       _____

                                                                       ROBERT W. LEHRBURGER
                                                                       United States Magistrate Judge

PLAINTIFF(S):                                             DEFENDANT(S):

Pablo Fernandez                                      City, Melino, Parson, Garcia, Quinn

_____    _____

ATTORNEY NAME(s):                              ATTORNEY NAME(s)

| | |
|---|---|
| David W. Brown | Corey S. Shoock |
| Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019 | Office of the Corporation Counsel<br>100 Church Street<br>New York, NY 10007 |
| ADDRESS | ADDRESS |
| TEL: 212-373-3504 | TEL: 212-356-5051 |
| EMAIL: dbrown@paulweiss.com | EMAIL: cshoock@law.nyc.gov |

## Appendix to [Proposed] Civil Case Management Plan and Scheduling Order in *Fernandez* v. *City of New York, et al.*, 20 Civ. 10498

**Question 2.b (Informal Exchange of Information in Aid of Early Settlements)**

Plaintiff agrees to provide Mr. Fernandez's DOCCS file, and prison and medical records, records received through FOIL, and *Rosario* statements in his possession, custody, or control, subject to the negotiation of a protective order.

The Defendants agree to provide New York City Police Department ("NYPD") investigative reports in their possession.

**Question 3 (Plaintiff's Response to the Parties' Summary of Their Claims, Defenses and Relevant Issues)**

Plaintiff Pablo Fernandez was convicted of a murder that he did not commit and unjustly imprisoned for nearly 25 years in New York State correctional institutions.

The crime underlying this case took place in the NYPD's 30th Precinct on June 10, 1993, when a tall, thin, White or light-skinned Hispanic man in his mid-thirties or forties shot and killed a teenager named Ramon "Manny" Quintero on West 135th Street in uptown Manhattan. Mr. Fernandez looked nothing like Quintero's shooter. He was, and is, a dark-skinned man, who, when the crime occurred in 1993, was 20 years old with a stocky build and short, dark hair. In the weeks after Quintero's murder, the NYPD began an investigation. But, consistent with well-documented and admitted practice in the 30th Precinct at the time, the initial assigned officers intentionally failed to follow up on important leads.

Approximately two years later, long after the case had gone cold, a second set of NYPD officers embarked on a brazen, corrupt scheme to frame Mr. Fernandez for the crime. Undeterred that (a) Mr. Fernandez bore no resemblance to the man who shot Quintero, (b) there was no physical, forensic, or ballistics evidence connecting him to the crime, and (c) there was no conceivable motive for him to have committed the homicide, the Defendants built a case against Mr. Fernandez that was based on testimony they and their witnesses knew to be false.

Among other things, corrupt NYPD officers pressured vulnerable teenage eyewitnesses to lie and falsely incriminate Mr. Fernandez as the shooter. These officers also conspired with two cooperating witnesses, both violent drug dealers facing the potential of long prison sentences for other crimes, to provide false testimony to supply a supposed motive for Mr. Fernandez to have committed the crime.

The defendants built the fraudulent case against Mr. Fernandez through corrupt and unconstitutional practices the City of New York has admitted were widespread throughout the NYPD in the decade leading up to Mr. Fernandez's conviction. Those

practices included habitually fabricating evidence, committing perjury in felony cases, pressuring witnesses and informants to lie, dealing drugs, misusing their police authority to protect drug dealers, and burying evidence of their official misconduct. Those practices infected this case and others because of a widespread breakdown in supervision and discipline to prevent corruption throughout the NYPD in the mid-1980s and 1990s.

Days after Mr. Fernandez was convicted in 1996, the lead investigator in the case, NYPD Officer Albert Melino, was arrested on drug trafficking charges. In the early 2000s, two of the teenage eyewitnesses recanted their testimony, explaining that the corrupt police officers had pressured them to lie. A third eyewitness came forward with a similar recantation in 2009.

Mr. Fernandez always maintained his innocence and was finally exonerated in 2019, after the Second Circuit reversed his conviction on the basis of police misconduct. Subsequently, the Manhattan Supreme Court vacated his conviction. The Manhattan District Attorney's Office conducted a further investigation and produced evidence to the defense demonstrating that both of the government's cooperators had committed perjury in Mr. Fernandez's 1996 trial. In September 2019, the DA's Office moved to dismiss the indictment.

These facts provide the basis for the following claims:

1) Plaintiff's first claim of relief is based on the deprivation of liberty without due process of law and the denial of a fair trial, in violation of 42 U.S.C. § 1983, and the Fifth and Fourteenth Amendments. Plaintiff alleges that defendant officers and investigators fabricated inculpatory evidence (including witness statements and identifications), used unduly suggestive identification procedures (including in photo arrays and line ups), and failed to disclose exculpatory and impeachment evidence (including exculpatory statements by witnesses and police misconduct), which caused Mr. Fernandez's wrongful arrest, prosecution, conviction, and nearly 25 years of incarceration.

2) Plaintiff's second claim of relief is based on malicious prosecution, in violation of 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments. Plaintiff alleges that defendant officers and investigators, with malice and knowing probable cause did not exist, caused Plaintiff to be arrested, charged, and prosecuted for the Quintero homicide. Plaintiff alleges that these acts were performed under color of law, intentionally, with reckless disregard for the truth, and with deliberate indifference to Plaintiff's clearly established constitutional rights.

3) Plaintiff's third claim of relief is based on a civil rights conspiracy, in violation of 42 U.S.C. § 1983. Plaintiff alleges that defendant officers and investigators agreed among themselves and other individuals (including two government cooperators) to deprive Plaintiff of his clearly established constitutional rights, including by fabricating inculpatory evidence, wrongfully arresting and prosecuting Plaintiff without probable cause, suborning and committing perjury,

    failing to disclose *Brady* material, and failing to investigate the true perpetrators of the Quintero homicide.

4) Plaintiff's fourth claim of relief is based on failure to intercede, in violation of 42 U.S.C. § 1983. Plaintiff alleges that defendant officers and investigators had opportunities to intercede to prevent Plaintiff's malicious prosecution and the deprivation of his liberty without due process of law but, due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so.

5) Plaintiff's fifth claim of relief is supervisory liability, in violation of 42 U.S.C. § 1983. Plaintiff alleges that the individual defendant police officers and investigators acted with impunity in an environment in which they were not adequately supervised or disciplined by the defendant supervisors.

6) Plaintiff's sixth claim of relief is a *Monell* claim against defendant New York City, under 42 U.S.C. § 1983. Plaintiff alleges that prior to and at the time of the unlawful investigation, prosecution, and conviction of Mr. Fernandez, the NYPD, by and through its final policymakers, maintained a policy, custom, or pattern and practice of failing to adequately supervise and discipline NYPD detectives and officers in connection with fundamental investigative tasks, and maintained a policy, custom, or pattern and practice of promoting, facilitating, and/or condoning improper, illegal, and unconstitutional investigative techniques in serious felony investigations, including but not limited to the following: (a) the use of unreliable informants and/or the reliance on witness statements that law enforcement knew or should have known were false; (b) the use of suggestive techniques and/or direct suggestion and/or coercive techniques in interviews and interrogations to obtain false statements and false identifications; (c) the fabrication of inculpatory evidence; (d) the suppression of exculpatory and/or impeachment evidence; (e) the intentional failure to conduct adequate investigations of crimes; and (f) engaging in the affirmative concealment and cover up of these types of misconduct. Plaintiff alleges that these unconstitutional municipal customs, practices and/or policies caused Plaintiff's arrest, prosecution and incarceration.

7) Plaintiff's seventh claim of relief is based on malicious prosecution, in violation of New York state law. Plaintiff alleges that defendant officers and investigators acted intentionally, recklessly, and with malice, and despite knowing that probable cause did not exist, to cause the arrest, prosecution, and conviction of Plaintiff for the Quintero homicide.

8) Plaintiff's eighth claim of relief is based on intentional, reckless, or negligent infliction of emotional distress, in violation of New York state law.

9) Plaintiff's ninth claim of relief is based on supervisory negligence, in violation of New York state law. Plaintiff alleges that defendant supervising officers and investigators were grossly negligent and negligent in the supervision and discipline of the other defendant officers, and that they should have known of the

   investigative misconduct including fabricating evidence, conducting unduly suggestive identification procedures, and failing to document and disclose material, exculpatory and impeachment evidence.

10) Plaintiff's tenth claim of relief is based on *respondeat superior* against defendant New York City, in violation of New York state law. Plaintiff alleges that the conduct by which the defendant officers committed the torts of malicious prosecution, intentional, reckless or negligent infliction of emotional distress, and negligence was not undertaken for the defendant officers' personal motives, but rather was undertaken while the defendant officers were on duty, carrying out their routine investigative functions as detectives and police officers.

**(Defendants' Response to the Parties' Summary of Their Claims, Defenses and Relevant Issues)**

   On June 10, 1993, at 6:30 p.m., Ramon Quintero was shot and killed in the vicinity of 504 West 135th Street in Manhattan by an individual who stepped out of the passenger seat of a car. A second victim was wounded, but survived.

   After the shooting, Defendant Detective Willie Parson was assigned to the Quintero homicide as the 30th Precinct "catching detective" that date. Det. Parson responded to the crime scene, identified witnesses, and investigated leads based upon conversations with individuals and information provided by anonymous telephone callers to the NYPD.

   In 1995, Defendant Officer Albert Melino, then an NYPD member of service assigned to the 24th Precinct, was detailed to the Homicide Investigation Unit ("HIU") of the New York County District Attorney's Office ("DANY"). Officer Melino was involved in the investigation of drug gangs in Manhattan Valley, including the Yellow Top Crew ("YTC") and Red Top Crew ("RTC"). Officer Melino and former Detective Mark Tebbens learned through their investigation that Plaintiff Pablo Fernandez was hired as a hitman to murder Quintero as part of a cycle of retaliatory violence between YTC, RTC, and their antagonists. The officers learned that Plaintiff altered his appearance to look older at the time of the shooting.

   Officer Melino, Det. Tebbens, and Defendant DANY Detective Investigator Angel Garcia interviewed witnesses previously identified by Det. Parson, who by then had been transferred from the 30th Precinct. Those witnesses identified Plaintiff as Quintero's killer, first in photo arrays, and later in lineups conducted in the presence of Plaintiff's criminal defense attorney at the time. Prior to the trial, Officer Melino and Det. Tebbens located additional witnesses, both of whom identified Plaintiff in court.

   At trial, four eyewitnesses to the homicide identified Plaintiff as the shooter. Two gang members who executed cooperation agreements with DANY also testified concerning the background of the shooting, the hiring of Plaintiff as the hitman, and Plaintiff's admission concerning the killing of Quintero.

4

Plaintiff was duly convicted of Murder in the Second Degree on February 16, 1996.

The allegations of misconduct by Det. Parson and Officer Melino did not involve the Quintero homicide, the subsequent investigation, or the trial and conviction of Plaintiff. Likewise, this homicide was not a subject of the Mollen Commission's investigations.

Following Plaintiff's conviction, associates of Plaintiff secured the recantations of three trial witnesses through coercive means. Post-conviction litigation rejected two of the recantations as false. The state court who presided over the two motions to vacate the judgment of conviction also rejected the third recantation as not credible. This finding was undisturbed by the Magistrate Judge and District Judge in their rulings on Plaintiff's petition for a writ of *habeas corpus*. In February 2019, the Court of Appeals reversed that finding, ruling that the state court's adverse credibility finding of the third recantation was not supported by the evidence.

DANY re-investigated the case in 2019 and determined that although they were confident that Plaintiff was guilty of murdering Quintero in 1993, they agreed to dismiss the indictment because they did not believe that a retrial could result in a finding of guilt beyond a reasonable doubt.

Plaintiff's Due Process/ Denial of a Right to a Fair Trial claim will fail because he cannot prove that evidence was fabricated, nor can he establish that exculpatory evidence that would have changed the outcome of the 1996 trial was withheld.

Plaintiff will be unable to prove Malicious Prosecution under federal or state law because probable cause existed to support Plaintiff's prosecution.

Plaintiff's Conspiracy claim is fatally flawed because there is no evidence of a meeting of the minds by, between, or among any of the individual defendants to establish an agreement to violate Plaintiff's rights.

Plaintiff's Failure to Intercede claim will fail because no evidence exists to show that Defendants had a reason to know that another law enforcement officer was engaged in violating Plaintiff's constitutional rights and failed to prevent that violation.

Plaintiff's claims for supervisory liability and <u>Monell</u> liability will not survive as Plaintiff will not be able to show an underlying constitutional violation, let alone that his rights were violated pursuant to actions or omissions by policymakers. For this reason, Plaintiff's state law *respondeat superior* claim will fail as well. Likewise, while Plaintiff can refer to unrelated instances of misconduct on the part of law enforcement officers, Plaintiff will not be able to establish that such attenuated wrongdoing constitutes a custom or practice that resulted in a deprivation of Plaintiff's rights.

Plaintiff's state law claim for supervisory negligence will fail because Plaintiff will not be able to show that any decision-maker in authority over the homicide

investigation had a basis to believe that their subordinates were engaged in unlawful practices in violation of the Constitution.

Finally, Plaintiff's state law claims for Intentional and Negligent Infliction of Emotional Distress are patently baseless.

**Question 5 (Plaintiff's Response to Subjects on Which Discovery May Be Needed)**

The homicide of Manny Quintero (including, for example, discovery relating to eyewitness identifications and other witness statements, the identity of the actual shooter, and any other persons of interest or suspects); the failure to conduct a proper investigation of the Quintero homicide; the investigation, arrest, prosecution, and conviction of Plaintiff Pablo Fernandez; the government cooperators against Mr. Fernandez (including, for example, discovery relating to their criminal histories, their cooperation, and the Yellow Top Crew); misconduct of and corruption by the police officers and investigators involved in the Quintero homicide investigation, including in that investigation and others; misconduct of and corruption by the police officers and investigators involved in the investigation, arrest, prosecution, and conviction of Mr. Fernandez in his case and other cases; the Manhattan District Attorney's 2019 re-investigation; the NYPD's policies and practices regarding supervision, discipline, the use of informants, interrogation and identification techniques, fabrication of inculpatory evidence, suppression of exculpatory or impeachment evidence, and the cover up misconduct during the relevant time period.

**(Defendants' Response to Subjects on Which Discovery May Be Needed)**

Defendants intend to seek discovery regarding Plaintiff's private investigation into his own conviction, including records of communications with trial witnesses on his behalf by Plaintiff or his agents and associates.